```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
SEAN FLYNN, et al.,                                          :
                                  Plaintiffs,                :
                                                             :            21 Civ. 614 (LGS)
                    -against-                                :
                                                             :            OPINION AND ORDER
MCGRAW HILL LLC, et al.,                                     :
                                  Defendants.                :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Sean Flynn, Dean Karlan, Jonathan Morduch, David Myers and Jean Twenge, individually and purportedly on behalf of all others similarly situated, bring this action alleging breach of contract and breach of the duty of good faith and fair dealing against Defendants McGraw Hill LLC and McGraw Hill Education, Inc. Defendants move to dismiss the Amended Consolidated Class Action Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted as to the breach of contract claim and denied as to the breach of good faith and fair dealing claim.

I. **BACKGROUND**

The following facts are taken from the Complaint and are assumed to be true only for purposes of this motion. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

This is a royalty dispute arising between Plaintiffs, academics who author textbooks, and Defendants, McGraw Hill LLC and McGraw Hill Education, Inc. which publish, sell and distribute Plaintiffs' textbooks pursuant to publishing agreements (the "Royalty Contracts"). McGraw Hill LLC is the successor-in-interest to certain entities that were parties to the Royalty

Contracts. McGraw Hill Education, Inc. is an education and technology company and is referenced in royalty payments made to the authors.

The Royalty Contracts for Plaintiffs' textbooks share the following key provisions: (1) Plaintiffs (the authors) must deliver a manuscript of the work, which Defendants then publish "at [their] own expense," (2) royalties are paid as a percentage of the publisher's "net receipts" from the sale of the work and (3) "net receipts" is defined as the "selling price" less certain items, excluding the cost of publishing. Specifically, the Royalty Contracts for Plaintiffs' textbooks provide:

- Plaintiff Flynn's Royalty Contract states that he "shall prepare and deliver" to Defendants a manuscript for a "work" entitled "ECONOMICS: Principles, Problems, and Policies, 11th Edition." McGraw Hill "shall publish the Work at its own expense" in "such style and manner . . . and sell the Work at such prices, as it shall deem suitable." McGraw Hill "shall pay" a royalty consisting of a "percentage of [McGraw Hill's] net receipts for each copy of the Work sold" by McGraw Hill in the United States. "Net receipts" are defined as McGraw Hill's "selling price, less discounts, credits, and returns, or a reasonable reserve for returns." Pursuant to a 2006 amendment, Plaintiff Flynn's Royalty Contract also specifies that the "[r]oyalty for electronic rights to the work is the same as the domestic royalty rate" for U.S. sales.

- Plaintiff Karlan and Plaintiff Morduch's Royalty Contract defines the "work" as "Principles of Economics" and the single-semester, split versions of their work: "Principles of Microeconomics" and "Principles of Macroeconomics." The Royalty Contract provides that McGraw Hill "will publish the Work in book and/or electronic form at its own expense," and in publishing the work at its own expense, McGraw Hill makes "[a]ll decisions as to style of printing, paper and binding, . . . design and programming of electronic editions, . . . price(s) and all other matters involving terms of sale, distribution, advertising, promotion, appearance, design and format of the Work[.]" Royalties are due on the "net receipts from the sale of all print, custom and electronic editions" of the work. "Net receipts" are defined as the "selling price from each copy of any edition or version of the Work" less any "discounts, rebates and amounts credited for returns, and less a reasonable reserve for future returns."

- Plaintiff Myers and Plaintiff Twenge's Royalty Contracts define the "work" as "Social Psychology," "Social Psychology, Fourteenth Edition," and "Social Psychology: The Core," a/k/a *Exploring Social Psychology*. Plaintiff Myers and Plaintiff Twenge's Royalty Contracts state that McGraw Hill will pay a royalty on the "net receipts" from sales of the "Work." The Royalty Contracts define "net receipts" as McGraw Hill's "selling price less discounts, credits, and returns, or a reasonable

2

reserve for returns."  Moreover, McGraw Hill "shall publish the work at its own expense."

In 2009, Defendants launched an online platform called "Connect," a content management system for hosting and delivering electronic textbooks and related course materials. Each Connect offering consists of a textbook and course content derived from that text, sold together for a single price.  For more than a decade after Connect's launch, until November 2020, Defendants paid royalties to authors based on the entire sales price of the Connect offering.  Plaintiffs claim that this practice complies with the terms of the Royalty Contracts, which require royalty payments based on the "net receipts" of each textbook sold.

In November 2020, Defendants changed how they calculated and paid royalties on the Connect sales.  In November and December 2020, Defendants announced that "[e]ffective with this current royalty period," July to December 2020, Defendants would no longer pay royalties to authors based on the entire sales price of an electronic textbook sold for use on Connect. Instead, Defendant would pay royalties only on "the revenue attributed to the ebook component." Defendants explained the change in an email to Connect authors, "it was only recently that McGraw Hill had an objective way of determining the relative value of the three components of the Connect product (i.e., the ebook, the platform, and the course-specific content and technology accessed through the platform, which we refer to as CCC)."

Plaintiffs assert that this change constitutes a breach of contract in three ways:  (1) "it violates the explicit terms of the Royalty Contracts by introducing new terms that are not present in the Royalty Contracts"; (2) "the reduction violates the explicit terms of the Royalty Contracts which prevent [Defendants] from passing its publication costs to authors" and (3) "the reduction in royalty payments is contrary to [Defendants'] course of performance, which reflects its longstanding bargain with its authors."  Plaintiffs also assert a second cause of action, breach of

3

Defendants' duty of good faith and fair dealing, because redefining the "price" of the Connect-based textbooks as "only a fraction of the net receipts of those books . . . arbitrarily reduced the amounts on which royalties are due." This action followed in January 2021.

**STANDARD**

II. On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

## DISCUSSION

### A. Breach of Contract

The Complaint fails to state a viable claim for breach of contract. Under New York law,[1] on a contract claim, the threshold question is whether the contract is ambiguous. *See Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (applying New York law). "Whether a contract is ambiguous is a question of law, and courts may not resort to extrinsic evidence to aid in interpretation unless the document is ambiguous." *Banos v. Rhea*, 33 N.E.3d 471, 475 (N.Y. 2015); *accord CDC Dev. Props. Inc. v. Am. Indep. Paper Mills Supply Co., Inc.*, 184 A.D.3d 623, 624 (2d Dep't 2020). "A contract is unambiguous where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Edwards*, 938 F.3d at 12 (internal quotation marks omitted). "[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *Nomura Home Equity Loan, Inc., Series 2006–FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital, Inc.*, 92 N.E.3d 743, 747 (N.Y. 2017) (quotation marks omitted).

Under the Royalty Contracts, Plaintiffs are entitled to royalties based the "net receipts" of the total sales price of the "Work." Work is defined by the title of the textbook. Accordingly, Plaintiffs are entitled to royalties from net receipts on the textbook and no more. Plaintiffs are not entitled to royalties for additional content that Defendants sell with the Work.

---

[1] New York law governs this dispute because, according to the Complaint, many of the Royalty Contracts contain a New York choice-of-law provision. In addition, the parties agree that New York law applies. *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (where the "parties' briefs assume that [a given] state law governs . . . such implied consent is sufficient to establish the applicable choice of law.") (alteration omitted).

Plaintiffs argue that Defendants' new royalty payment policy breaches the Royalty Contracts in three ways. None of these arguments is persuasive. First, Plaintiffs argue that the Royalty Contracts require Defendants to pay royalties based on the "net receipts" of total sale price of the "Work" -- not just the "revenue attributed" to specific components of the Connect product. This argument falls short because it is inconsistent with the plain text of the Royalty Contracts, which define the "Work" by title as the textbook itself. *Accord Bernstein v. Cengage Learning, Inc.*, No. 19 Civ. 7541, 2020 WL 5819862, at *4 (S.D.N.Y. Sept. 29, 2020) (dismissing breach of contract claim on similar grounds).

Second, Plaintiffs assert that the new royalty payment policy charges what amounts to a platform fee to authors, violating provisions of the Royalty Contracts that require Defendants to publish the Works at their "own expense." This argument fails because Connect is more than a publishing platform and includes content in addition to the author's textbook, for example, PowerPoint lesson plans and tests. Connect is therefore not akin to the ink and paper required to publish a hardcopy textbook as Plaintiffs assert.

Finally, Plaintiffs argue that, "at a minimum," the Royalty Contracts do not "unambiguously" permit Defendants' new practice and thus this Court should consider the ten years that Defendants paid royalties on the net receipts from the entire Connect sales price. This argument fails because the Royalty Contracts unambiguously define the "Work" as the titles themselves. When a contract is unambiguous on its face, it is improper to consider extrinsic evidence. *Banos*, 33 N.E.3d at 475.

B. **Breach of Good Faith and Fair Dealing**

The Complaint states a viable claim for the breach of the implied covenant of good faith and fair dealing. "Under New York law, implicit in every contract is a covenant of good faith

and fair dealing . . . which encompasses any promises that a reasonable promisee would understand to be included." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (citing *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)) (internal quotations omitted). This covenant requires parties to a contract to refrain from "do[ing] anything [that] has the effect of destroying or injuring the right of the other party to receive the fruits of the contract," or violating the party's "presumed intentions or reasonable expectations." *Id.* (internal quotation marks omitted). "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (internal quotation marks omitted).

The decisive question here is whether the Complaint plausibly alleges a lack of good faith by Defendants. Plaintiffs have met this burden. The Complaint alleges that Defendants "unilaterally" and "arbitrarily and irrationally set the 'price' of authors' textbooks in such a manner that reduces the royalty payments owed to the authors and appropriates what should go to authors instead to McGraw Hill." The Complaint further alleges that these actions amount to "a bad faith effort to enrich [Defendants] at the expense of authors."

Defendants counter that the "price" of the ebook component of a Connect textbook sale is determined fairly based on the market value of the ebook. But that argument does not address the sufficiency of the Complaint, and instead raises a factual question, which cannot be resolved on a motion to dismiss. *See Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020) ("[A]t the motion to dismiss stage, . . . a court must assume the truth of the plaintiff's allegations and avoid resolving factual disputes.") Accordingly, the Complaint sufficiently pleads that Defendants breached the implied covenant of good faith and fair dealing.

IV. **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and the breach of contract claim is dismissed. The claim for breach of the implied covenant of good faith and fair dealing survives. Defendants' letter motion requesting oral argument is DENIED as moot.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 34 and 42.

Dated: January 11, 2022
         New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**