UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SEAN FLYNN et al., Plaintiffs, -against- MCGRAW HILL LLC and MCGRAW HILL EDUCATION, INC., Defendants. | : | 21 Civ. 614 (LGS)<br>21 Civ. 1141 (LGS)<br><br>**OPINION & ORDER** |

LORNA G. SCHOFIELD, United States District Judge:

Plaintiffs are authors of college textbooks published by Defendants McGraw Hill LLC and McGraw Hill Education, Inc. (together, "McGraw Hill"). The operative Amended Consolidated Class Action Complaint (the "Complaint") asserts a claim, individually and on behalf of a putative class, that Defendants have breached a term in Plaintiffs' Publishing Agreements with McGraw Hill stating that McGraw Hill will publish Plaintiffs' works "at its own expense." Defendants move for summary judgment on Plaintiffs' remaining claim. For the following reasons, the motion is denied.

## I. BACKGROUND

The following facts are taken from the parties' submissions and are construed in favor of Plaintiffs as the non-moving parties. *See Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021).

### A. The Parties' Agreements

Plaintiffs are authors of college textbooks published by McGraw Hill. Each Plaintiff entered a Publishing Agreement with McGraw Hill. Pursuant to the Publishing Agreement, each Plaintiff agreed to prepare and deliver to McGraw Hill a manuscript for a specified textbook or textbooks (defined in each contract as the "Work"). In each contract, McGraw Hill agreed, in

substance, that it "shall publish the Work at its own expense" after accepting the Work. Minor differences between the contracts are immaterial. For example, the Karlan and Murdoch contract states that "the Publisher will publish the Work in book and/or electronic form at its own expense."

Each contract specifies the royalties payable to Plaintiffs. Plaintiffs here are entitled to royalties on sales, defined as specified percentages of "the Publisher's net receipts from the sale for each copy of the Work sold by the Publisher" with different percentages based on the type of sale. The contracts further define "Publisher's net receipts" as "the Publisher's selling price less discounts, credits, and returns, or a reasonable reserve for returns."

**B. McGraw Hill Digital Content Offerings**

McGraw Hill sells textbooks in both print and digital form. Textbooks sold in digital format typically contain text content that is identical to the text content of the print textbook of the same title. McGraw Hill sells some textbooks in digital format as "standalone e-books" -- that is, as an ebook without any additional products. McGraw Hill also sells ebooks with access to a digital platform called Connect. According to McGraw Hill's Director of Royalty Operations, ebooks sold with access to Connect are "typically listed at a higher price than the standalone ebook."

A student who has purchased a Connect version of a textbook can access a copy of the textbook in two formats via Connect: an ebook and a "Smartbook." The ebook accessed via Connect is identical to the ebook sold as a standalone ebook. A Smartbook is a digital copy of a textbook that includes additional adaptive learning technology. On Connect, a student may also have access to additional content (including the additional content associated with the Smartbook), which McGraw Hill describes as "Connect Course Content" or the "CCC." The

CCC also incorporates content from the textbook -- for instance, the CCC may direct a student to relevant portions of the textbook as a student is completing an assignment, or the Smartbook may present comprehension questions in addition to the material in the textbook as the student reads the textbook.

**C. Author Royalties on Digital Sales**

McGraw Hill launched Connect in 2009. Before 2020, McGraw Hill calculated author royalties on textbooks sold through Connect without any deduction from the sale price for the value of the Connect platform. However, starting in 2020, McGraw Hill attempted to disaggregate the value of the ebook, the Connect platform and the CCC for purposes of royalty calculations.

Since at least 2020, for purposes of calculating royalties, McGraw Hill considers a sale of a Connect version of a textbook to include three components -- (i) the digital copy of the textbook (i.e., the ebook), (ii) the Connect platform and (iii) the CCC, which includes the Smartbook and other digital course content. McGraw Hill calculates the royalties due on the textbook component of a Connect version of a textbook based on the list price of the standalone ebook version of the textbook (or a prorated amount if the sale is discounted). McGraw Hill pays authors royalties on the textbook component of the sale at the contractual royalty rate.

For the Connect platform component of a Connect version of a textbook, McGraw Hill attributes $25 (or a prorated amount if the sale is discounted) to the value of the Connect platform (the "Platform Fee"). McGraw Hill pays authors no royalty on this component. McGraw Hill documents describe the Platform Fee as "reflect[ing] McGraw Hill's investment in building and maintaining the platform."

McGraw Hill attributes all revenue not attributed to the textbook or Connect platform components to the CCC. McGraw Hill applies a royalty rate to this component that varies depending on McGraw Hill's calculation of the author's contributions to the CCC. These calculations apply to any authors whose textbooks are sold as both a Connect option and a standalone ebook option and whose publishing agreements do not preclude the calculations.

**D. Procedural History**

In 2021, Plaintiffs brought this action asserting claims against McGraw Hill relating to McGraw Hill's calculation of royalties on Connect versions of textbooks for breach of the Publishing Agreements' "own expense" and "net receipts" provisions and for breach of the implied covenant of good faith and fair dealing. Defendants' motion to dismiss was granted in part, resulting in the dismissal of the express contract claim but not the implied covenant claim. *Flynn v. McGraw Hill LLC*, No. 21 Civ. 614, 2022 WL 103537, at *4 (S.D.N.Y. Jan. 11, 2022), *vacated and remanded*, 120 F.4th 1157 (2d Cir. 2024).

Plaintiffs voluntarily dismissed the implied covenant claim with prejudice and appealed the judgment. The Second Circuit affirmed dismissal of the claim for breach of the "net receipts" provision but vacated dismissal of the claim for breach of the "own expense" provision and remanded for further proceedings. *Flynn*, 120 F.4th at 1169. Regarding the "own expense" provision, the Court of Appeals concluded that the Complaint plausibly alleges that the Connect platform is being used to distribute the Works, meaning that resulting costs are a "publishing expense" to be borne by Defendants. *Id*. at 1168. Defendants now move for summary judgment on the claim that Defendants breached the "own expense" provision of the Publishing Agreements.

## II. STANDARD

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia*, 17 F.4th at 354. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine dispute as to a material fact precludes summary judgment where the evidence is such that a reasonable jury could decide in the non-movant's favor."[1] *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir.), *amended on reh'g on other grounds*, 151 F.4th 13 (2d Cir. 2025). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing materials in the record. Fed. R. Civ. P. 56(c)(1)(A). "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021). Local Rule 56.1 requires the non-moving party to admit or deny each statement of material fact proffered, with each denial "followed by citation to evidence that would be admissible." Local Civ. R. 56.1(b)-(d). When a non-movant fails to support its purported denial of a statement of fact with admissible evidence, that fact "will be deemed to be admitted for the purposes of the motion."

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

*Id*. R. 56.1(c). Where "the record does not support the assertions . . . those assertions should be disregarded." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167 (2009); *accord Chinese Am. Citizens All. Greater New York v. N.Y.C. Dep't of Educ.*, 802 F. Supp. 3d 483, 501 (S.D.N.Y. 2025).

New York law governs Plaintiffs' claims because the parties' briefing assumes that New York law applies. *In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law."). While the Complaint asserts that the Publishing Agreements contain New York choice of law provisions, the contract excerpts included in the record do not include the choice of law provisions.

**III. DISCUSSION**

Summary judgment is denied because, on the record provided, a reasonable jury could conclude that Defendants have breached the "own expense" provision of Plaintiffs' Publishing Agreements.

In the Publishing Agreements, McGraw Hill agreed to "publish the Work at its own expense." This provision is "a simple and straightforward statement of the parties' intention that the expense of publishing the Author's textbook is to be borne by the Publisher" and that "the Publisher is intended to cover its publishing expense from the 80-plus percent share of the sales income that it retains." *Flynn*, 120 F.4th at 1167. These "publishing expenses . . . can reasonably be understood to include, for example, the costs of preparing an accepted manuscript for publication, of promoting interest in purchasing the textbook, of arranging distribution channels, and of distributing the finished product, as well as of endeavors in furtherance of, and preparation for, those publishing efforts." *Id.*

Summary judgment is denied because a reasonable jury could conclude that McGraw Hill has breached the "own expense" provision of the Publishing Agreements by deducting a Platform Fee when calculating revenue from sales of Connect versions of Works. First, a reasonable jury could conclude that McGraw Hill's investments in and expenses relating to the Connect platform are publishing expenses within the meaning of the Publishing Agreements. McGraw Hill sells textbooks in several formats, including options such as "eBook," "Print" and "Connect." A student who purchases the "Connect" option can access a copy of the textbook as an ebook or as a Smartbook via the Connect platform. In either event, the student accesses a copy of the textbook containing text content that is identical to the content of the print textbook of the same title. The Smartbook option also includes additional features that incorporate content from the textbook. Because students access the Work through Connect, a reasonable jury could conclude that McGraw Hill's expenses relating to Connect are expenses of publishing the Work. *See id.* at 1167-68 (holding that Complaint allegations, including that the "Connect platform makes available 'ebooks' that are the central element of the Connect platform," state claim for breach of "own expense" provision).

Second, a reasonable jury could also conclude that the Platform Fee represents McGraw Hill's expenses relating to publishing works via Connect. Internal McGraw Hill documents describe the Platform Fee as "reflect[ing] McGraw Hill's investment in building and maintaining the platform." In an email to Plaintiff Flynn, McGraw Hill stated that it expects its investments in Connect technology "to drive market share growth." McGraw Hill's Director of Royalty Operations attests that ebooks sold with access to Connect are "typically listed at a higher price than the standalone ebook." A reasonable jury could conclude that the costs McGraw Hill incurred to drive market share growth and command a higher sales price are costs attributable to

"promoting interest in purchasing the textbook, of arranging distribution channels, and of distributing the finished product, [or] endeavors in furtherance of, and preparation for, those publishing efforts," which McGraw Hill is contractually required to bear. *See id.* at 1167.

McGraw Hill's contrary arguments lack merit. First, McGraw Hill argues that Plaintiffs have suffered no injury because Plaintiffs receive the same royalties on ebooks whether those ebooks are sold as standalone ebooks or along with Connect. Specifically, McGraw Hill argues that "McGraw Hill's methodology calculates royalties based on the same input -- i.e., the ebook's list price, or the same prorated amount for discounted sales -- in order to generate the same ebook royalty amount." This argument is unavailing because a reasonable jury could conclude that Plaintiffs are entitled to revenue in addition to the standalone ebook list price when McGraw Hill sells a Connect version of a textbook at a higher list price than the standalone ebook, to the extent that the jury concludes that expenses associated with Connect are publishing expenses and not McGraw Hill's investment in a separate product. Similarly, the jury would not be compelled to accept McGraw Hill's disputed framing that Connect versions of Works are, in fact, bundled sales of three separate products. McGraw Hill offers Connect as an option for purchasing a textbook along with, for example, print textbooks and standalone eBooks.

Contrary to McGraw Hill's argument, the Second Circuit did not reject the theory that Plaintiffs may be entitled to the contractual share of revenue on the full purchase price of Connect versions of Works, as opposed to the ebook portion of those sales alone. The Circuit held that the Complaint does not state a claim for breach of the "net receipts" provision because, under that provision, Plaintiffs are not entitled to royalties based on "sales of something other than their textbooks." *Id.* at 1166. However, the Circuit also held that, under the "own expense" provision, McGraw Hill may not deduct publishing expenses in calculating royalties paid to

Plaintiffs. *Id.* at 1167. A reasonable jury could conclude that sales of Connect versions of textbooks are not "sales of something other than [Plaintiffs'] textbooks" because Connect is a method of publishing Plaintiffs' Works. This theory is consistent with the Second Circuit's opinion.

Second, McGraw Hill argues that the Platform Fee reflects the market value of the Connect platform and that Plaintiffs' earning royalties on the value of the Connect platform would result in a windfall. Specifically, McGraw Hill argues that the Platform Fee is consistent with McGraw Hill's practice of charging schools that wish to use the Connect platform in connection with non-McGraw Hill content $25 per user for the value of the platform. This argument is unavailing because, if the jury reasonably concludes that expenses associated with Connect are publishing expenses that McGraw Hill is required to bear, the market value of the Connect platform in other contexts is irrelevant to the royalties to which Plaintiffs are entitled. Under the Publishing Agreements, McGraw Hill is required to bear expenses in relation to other assets that have market value -- for instance, paper, binding materials and other "costs of preparing an accepted manuscript for publication." *See id.*

McGraw Hill argues that expenditures on Connect are not akin to expenditures on paper or similar materials because paper imposes variable costs on a publisher while McGraw Hill's Connect-related costs are operating costs that are not specific to any ebook. A reasonable jury would not be required to credit this distinction. For example, Plaintiffs present industry expert testimony that "'operating' costs are just as much an expense of publishing as 'variable' costs" because a publisher "cannot publish textbooks without paying its staff, owning or leasing offices for its staff to work, owning or leasing warehouses for print materials, or maintaining the software to deliver and access digital materials." A reasonable jury could credit this testimony.

McGraw Hill argues that Plaintiffs' expert's theory is absurd because the theory's definition of publishing expenses is limitless. However, at summary judgment, "[t]rial courts should not arrogate the jury's role in evaluating the evidence and the credibility of expert witnesses by simply choosing sides in the battle of the experts." *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1135 (2d Cir. 1995); *accord Nextera Energy Mktg., LLC v. Macquarie Energy LLC*, No. 22 Civ. 1345, 2025 WL 2613756, at *9 (S.D.N.Y. Sep. 10, 2025).

Third, McGraw Hill argues that ebooks are not "published" on Connect because they are "not hosted on Connect or presented to readers on Connect." Instead, McGraw Hill argues, ebooks are hosted and presented on a separate application and are only accessible via Connect by a hyperlink to that application. This argument is unavailing because a reasonable jury would not be compelled to conclude that Works are not "published" on Connect. Internal McGraw Hill documents describe Connect as one of several "method[s] of content delivery"; McGraw Hill has described the platform externally as "deliver[ing]" content; McGraw Hill's corporate representative testified that the "Connect platform has an e-reader in it" for ebooks and another McGraw Hill witness agreed that "Smartbook is the reader within Connect that allows people to read textbooks on Connect." McGraw Hill contends that this evidence constitutes "soundbites at odds with the record" that "do not alter the technological reality" that ebooks and Smartbooks are hosted on separate applications. This argument lacks merit because, at summary judgment, "the court is not to . . . weigh the evidence," and contrary evidence exists -- including McGraw Hill documents and deposition testimony. *See Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 88 (2d Cir. 2025).

Contrary to McGraw Hill's argument, the Second Circuit did not hold that Connect must, as a technical matter, "host" Plaintiffs' Works for expenses associated with Connect to be

publishing expenses. The Circuit held that McGraw Hill must bear its "publishing expenses" and provided a non-exhaustive list of such expenses but did not reference "hosting" in its discussion of the "own expense" provision. *Flynn*, 120 F.4th at 1167. While the Circuit stated that the Complaint alleges that Connect "hosts" and is a system for "hosting" ebooks, *id.* at 1160-61, the Circuit did not state that, as a matter of contract interpretation, "hosting" is required for expenses to be publishing expenses.

Fourth, McGraw Hill argues that it incurs no "expense" in making ebooks available via a hyperlink on Connect. This argument is unavailing because a reasonable jury could conclude that McGraw Hill's publishing expenses include the costs of developing and maintaining Connect, which the Platform Fee reflects. McGraw Hill argues that these costs attendant to building and maintaining the platform, in fact, "have nothing to do with publishing ebooks, distributing ebooks, or otherwise making ebooks available to users" and presents expert testimony that the publishing industry does not consider such costs to be "expenses of publishing an ebook." However, Plaintiffs present contrary testimony from an industry expert. Because a reasonable jury could credit Plaintiffs' contrary expert testimony, summary judgment is denied. *See In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d at 1135.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**.

By **October 1, 2026**, Plaintiffs shall file any pre-motion letter in support of a motion for class certification. If no letter is filed, a trial will be scheduled among the named parties.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 192.

Dated: September 17, 2026
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**